Good morning. My name is Cesar Luna. I represent Ms. Cobian-De Andalon, the petitioner in this case. Could I reserve three minutes for rebuttal, please? You may, but that is the total time, so you better help keep track of it with us. I certainly will. Well, this case presents simply just one principal issue, and that is whether or not the time of legal stay after a properly filed prima facie application for adjustment of status qualifies for the required seven-year continuous residence after having been admitted in any status for purposes of cancellation of removal. And of course, you know, the Court is well aware that this Court has already held in Garcia-Quintero that in a very similar factual case that members under the Family Unity Program have been deemed to be admitted in any status for purposes of cancellation of removal. This case is very important and very relevant because the Court goes on to basically state that the term admission is not strictly constrained to the definition, to the strict definition of Section 101A.13 of the Immigration and Nationality Act. In fact, the Court recognizes that this Court as well as the Board of Immigration Appeals in different cases have ruled in a very consistent manner, and that is it's not strictly constrained and it could be interpreted to mean many other things aside from having to be admitted as a permanent resident. Well, but the phrase is, is it not admitted in any status? That's correct, Your Honor. So I think the fundamental terms that this appeal is seeking the Court's interpretation is what does it mean to be admitted and what is its status. And once again, the Garcia-Quintero decision reflects on those two terms. Except, counsel, one of the things that the panel in that case relied upon was the language in the statute that said that FUP beneficiaries who travel outside the United States are admitted in the same immigration status. That's the quote, admitted in the same immigration status upon return. And they were seizing upon the statutory language of admission and status. There's nothing comparable for someone in your client's position. So how much should that weigh in the balance? There's nothing comparable in terms of the statute. We did not find any statute that would compare. But, in fact, an applicant for adjustment of status while his or her application is pending is allowed to travel by the issuance of an advance parole very similar to the family unit benefits. In fact, there's really, for practical purposes, there's no distinction in the temporary immigration benefits that an applicant for an adjustment of status receives as opposed to a beneficiary for family unity benefits. For example, both of them can travel temporarily under an advance parole. Both of them under both benefits are allowed to stay and work. So in practical reasons, there's really no distinction between an adjustment of status pending and a family unity program. In fact, we would argue that it's more compelling an application for adjustment of status, particularly in light of Section 245I, which allows persons to file for adjustment of status even though they first came to the country unlawfully. They're allowed to use 245I to apply for adjustment of status. And when the application is for a petition that is immediately available, as a U.S. citizen, for example, it gives much more relevance than a family unity beneficiary because that person could be waiting for many, many years without that certainty that if that petition ever will become current, the person is more of a limbo rather than someone who is more immediate. So the protections are there. But the employment authorization document that one gets under H.C.F.R. 274812C9, that's a big mouthful for a guy from Idaho, but says that the applicants for adjustment of status are not admitted in any status. That's what the CFR says. Correct. And it says they're only authorized for work. Correct. And wouldn't you also agree that once the status of lawful permanent resident is allowed, it is not granted retroactively to the date of the application? We're not talking about admission in a status as a permanent resident. But isn't that the very application that your client is making? They're making an application for a lawful permanent resident. And having made that application, they are then granted some employment authorization document, which is covered by the CFR. And then if they ever get the lawful permanent resident, they're not granted any retroactive date. They are only given, if they get lawful permanent residents, only allowed at the date they're allowed the status of lawful permanent resident. But the question remains is what happens to the period of time after the government has admitted that application for adjustment of status until that application is fully adjudicated? And if we follow Garcia Quintero, if we look at how the court analyzed the term admission. Well, but they have some statutory complex to look at at that particular situation, as Judge Schroeder has suggested. Here, what you're suggesting is that one has a privilege of residing permanently in the United States prior to the disposition of the very privilege. Isn't that what you're arguing? Not necessarily, Your Honor. What we're saying is that the application or the pending application for adjustment of status gives the applicant certain limited immigration benefits, very similar to what the Family Unity Program offers. Those limited immigration benefits amount to some form of legal standing. And the court in Garcia Quintero has determined that when we use the common notion of what a status is, it is a legal standing. So the practical and legal effect of someone having filed the application for adjustment of status, being allowed to stay, remain in the country, being allowed to properly work, have the privilege to leave the country on a temporary basis and return to the country under that same whatever status it may be, that is very comparable to what the Family Unity Program has. Let me ask you a question that's really specific to your particular proceeding. Where in the record do I find the evidence that your client received a work authorization? There's nothing on the record, Your Honor. Where do I find that your client received permission to remain pending disposition of the application? Well, by the mere virtue of having applied for the application for adjustment of status, the person had to have remained in the country pending the adjudication. Well, I guess I'm trying to find the evidence in the record that would suggest that you have the authority to be here and argue what you're arguing, which I couldn't find. No, because at the very preliminary time when we went before the immigration judge, the immigration judge, from the very outset, preterminated our opportunity to bring the cancellation or removal case and only allowed us to put forward the arguments. So you're asking us to assume this so that it can go back and all this can be determined? Well, essentially, yes. Here, again, the question is even assuming that the applicant did properly file an application for adjustment of status, did wait for six months prior to being admitted to the United States as a permanent resident, what happens with those six months? Okay. You have about a minute left if you'd like to serve it. Again, just to emphasize that both the García Quintero case quotes several cases that this Court has heard, Cuevas-Gaspar, Chivarama, and Yepes-Raso. They all, at some way or another, have come to the conclusion that the term admission is not just constrained to that strict definition. You have about 30 seconds left total. So the legal analysis and you don't want to reserve any time? Yes. Okay. You've used it all. Okay. I'm sorry. You've used all but 30 seconds. Okay. I'll hold on for another 30 seconds. We'll give you a minute. Thank you. Good morning, Your Honors. Jessica Siegel for the Respondent, Eric Holder. This case is about the statutory requirements for cancellation of removal, and under the statute an applicant must reside in the United States for seven years prior to being admitted in any status. In this case, petitioner was admitted less than seven years prior to obtaining lawful permanent resident status, and therefore she is statutorily ineligible for cancellation of removal. To go to the heart of Your Honors' question so far this morning, in terms of García Quintero, the important relevant information to take from that case is that even under the Family Unity Program, the aliens in those cases were still approved for the program. Therefore, they filed an application that was then approved, and not until that application was approved did they receive any of the benefits that we're talking about here today. Although the regulations do post-date, and that may be where some of the confusion comes in, the regulations post-date the benefits date back to the date that the application was filed, that's special for those regulations. Just out of curiosity, have there been any other circuits who have weighed in on this issue? The Fifth Circuit and the Eighth Circuit, not necessarily in terms of the Family Unity Program, but have discussed this issue and have both found that admitted as a lawful permanent resident is the date in similar cases. Is there any other Family Unity law out there? There are no cases similar to García Quintero out there, no. And even the Board, in its review of the issues, has not had a similar precedent. I'm curious. The BIA has addressed this issue, but has declined to publish any of them in a binding precedential opinion. Why is that? Why are we being asked to make the decision in the first instance, in effect? I have no idea why the Board hasn't published on this issue. García Quintero is a sole outlier in this field. The BIA, that should be no surprise to them. Possibly. We should try to pre-termit this issue by deciding it. I'm having a little problem because, in a more general sense, I look at what motivated the panel in Quintero's opinion, was the BIA decision that says that if somebody comes in and overstays their visa, they come in on a, of course he was five years old, but nonetheless, at 72 hours, and then, so he came across the border, inspected and admitted, but only for purposes of a 72-hour stay. And then, as I understand it, stayed, I mean, again, a child, but nonetheless would apply, I guess, to anybody who came across on a visa and then overstayed, and then applied for adjustment of status. But that person got to accrue the time that he was in the country, even though he was not admitted for purposes of a lengthy stay, and yet that person, under the Board's rationale, treating admission, says that that's sufficient. Isn't that correct? Are you referring to Mayra versus Ramirez? No, I'm talking about, what is it, Blanco's Lara. Okay. Yes. In some cases, both the Board and this Court have found the first entry, an inspection, to constitute the admission. For example, in this Court's case, United States versus Latu, this Court and Ocampo-Duran versus Ashcroft, this Court has found that an admission in some status, for example, or, excuse me, Bazargan at 922 S. 2nd, 844. In that case, for example, the petitioner was admitted as a student and then lost his student visa and then was, and had committed a crime at some point in the intervening time. And the student visa admission under a student visa was the first admission because that was a lawful admission. So that means all that unlawful time in the country, nonetheless, counts as residency against the seven-year requirement. Yes, but it also counts against other requirements in other situations. That may be, but at least for purposes of the accumulation of the time in country, under the BIA interpretation, that that is enough to allow, because they came in, notwithstanding they violated the law. They're not here lawfully, but they were admitted. You have somebody else who, in the position of Cobian, who is here, didn't go through the inspection, but nonetheless came forward and applied for status. And yet until that process all goes forward, she gets no ability to accrue the time, even though the DHS officials have, A, knowledge of her presence, B, have authorized her to stay and work. So why doesn't that put her on a par, at least from a policy standpoint, of what the government seems to be trying to accomplish, or the Congress was, and effectively on a par with the Family Unity Program? You know, what's the point? Your answer is twofold. The first is that the plain language of the statute clearly says admitted in any status. So that's hard to get around in the context of the board construed, admitted, and in these other cases, in fact, our outlier precedent, which happens to bind us, is that admission is not used in a technical sense of inspection. It's still obtaining a status. So admitted has been equated to obtaining some form of status. So what they've got is the status of permission from the government to be here, known to the government, and to work. That is a change in status of being unknown to the government and unauthorized to work. So now they are, as I understand it, I could be wrong, but my understanding is you apply for this and you get an application for work now, as long as you're here under that circumstance, can you then be removed? Your removal is not prohibited per se, but there are, it's almost an unspoken, there's no statutory or regulatory prohibition on it. They're a different status, certainly, from somebody who has not gone through that process. Correct, they have a pending adjustment application. But their employment authorization gives them no status whatsoever. Even this court in Bazagaran has found that just an employment authorization does not equate to status. So basically, I guess your position would be that by saying that someone had originally admitted who overstays, the board, to count that time, the board is being charitable. In this sense. Yeah. And to answer your Honor's policy questions, in the context of all of these cases that are before you today, the board and this court and the Fifth and the Eighth Circuit have both recognized that the approval of an application, whether it's a student visa application or an adjustment application or an application to the Family Unity Program, being approved for some sort of status is vastly different than filing an application for a status. Filing an application for a status can then be denied. Yeah, no, I understand the filing. But I also, you know, the fact that you are allowed to stay and you are authorized to work. Somebody has exercised, the government has exercised an investigative function and an approval function to say you have made this application and we will let you, known to us, remain in the United States. You say it's an unspoken. An adjustment of status application, a person who's applied for adjustment of status, does not have the same benefits in terms of relief from removal or not being removable as somebody who's been approved for the Family Unity benefits. That's a very different status. I'll accept that. But as compared to somebody who has not come forward and made that application and been given an explicit authorization, they have a different status from somebody who is simply working under the, you know, below the radar.  There is cancellation of removal for cancellation B, under subsection B. But they're different from the situation that Ms. Covey applied for. Correct. The cancellation under subsection A is less stringent requirements for people who have been admitted to lawful permanent residence status. Can you explain V non-immigrant status to me? Explain, I'm sorry? V non-immigrant status in 8 CFR 214.15. 8 CFR. I just want to grab my book. Because it seems to me that a V non-immigrant status is the type of status that Ms. Covey may want that she doesn't have. You know, my understanding is it's an application that has to be filed, and that wasn't. I understand that. But I can get back to you on that. I understand that. But under V non-immigrant status, Ms. Covey may have the status change that she may want. But she never did have V non-immigrant status. That's still an application for a V visa, which is a whole separate process that is not an issue in this case. All right. Thank you for your time. Thank you. The difference between approved or filing, we're not suggesting to the court that the mere filing of the application for adjustment of status should be deemed to count. What we're suggesting, just like in Garcia Quintero, is that the acceptance by the government, either in the Family Unity Program or in the context of the adjustment of status, that's what triggers the admission in any status for purposes of cancellation or removal. So you're suggesting that because the government will allow your client to work here, that that's a status adjustment? And to stay here and to travel temporarily. In that case, are you really not putting at odds a general policy that when one is making such application, one doesn't just necessarily lock the person up until it's made, but one allows the person to just carry on, and you're suggesting that that is somehow a change in their status? For cancellation or removal purposes, we submit to the court that, in fact, the minute that the government allows the person to remain in the country to work and to travel should count for the proper legal residence. Thank you. I think the case just argued is submitted for decision. We'll hear the next case, which is Vasquez del Cantar v. Holder.
judges: Schroeder, Fisher, Smith N. R.